## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 899 |
| | ) | (00 CR 175-2) |
| RAFAEL CEJA, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court is Rafael Ceja's motion under 28 U.S.C. § 2255 to vacate the judgment of conviction entered against him and the sentence subsequently imposed. For the following reasons, the motion is denied.

### BACKGROUND

On May 21, 2001, Rafael Ceja was convicted of possessing marijuana with intent to distribute and conspiracy to do the same. See 21 U.S.C. §§ 841(a)(1) and 846. The overwhelming evidence at trial, which included recorded conversations by Ceja, surveillance, and co-defendant testimony, demonstrated that Ceja used his furniture store to help his co-conspirators import marijuana from Mexico.

#### Evidence at Trial

In February 1999, co-defendant Alejandro Castellanos agreed, in exchange for money, to help his uncle Salvador Castellanos

unload marijuana that would be arriving in a furniture shipment from Mexico. The marijuana was secreted in hidden compartments built into dressers and was to be delivered to Muebleria La Barca, a furniture store in Chicago owned by Ceja. The first shipment arrived on March 15, 1999, and Alejandro, Ceja and others unloaded the furniture containing approximately 600 kilograms of marijuana. Some time later, Alejandro and others moved the dressers from Ceja's store, removed the marijuana, repaired the dressers, and returned them to the store. Ceja thought the March 15 shipment was a routine furniture delivery; he did not know the dressers contained marijuana.

A second shipment of marijuana-laden dressers arrived at Ceja's store on September 26, 1999. During shipment, one of the dressers broke open, thereby revealing its contents to Ceja on arrival. Salvador offered Ceja $25,000 and the furniture at no cost in exchange for his silence. Ceja accepted. Ceja and others removed approximately 900 kilograms of marijuana from the dressers, which Ceja later repaired.

Alejandro approached Ceja regarding a third shipment. Ceja agreed to help, in exchange for $50,000 and the furniture for free. Since La Barca already had been used for two shipments, Ceja also agreed to open a new store to receive the delivery. He found a building, a former liquor store, named it Erika's Furniture (though no such name appeared on the premises) and, on or around December

12, 1999, took delivery of approximately 900 kilograms of marijuana. On or around February 7, 2000, a fourth shipment arrived at Erika's, also containing approximately 900 kilograms of marijuana. Ceja was paid approximately $50,000 for his assistance.

The fifth and final shipment prior to Ceja's arrest arrived at Erika's Furniture on March 10, 2000. Once again, Ceja was to receive $50,000 and the furniture for free. Yet, unbeknownst to Ceja or his cohorts, the shipment was a controlled delivery set up by Customs Service agents who had discovered that the furniture contained marijuana. The shipment was unloaded by Ceja, Alejandro, Carlos Castellanos (Alejandro's cousin) and others under law enforcement surveillance.

Later that afternoon, Ceja left the store. As Alejandro and Carlos were leaving shortly thereafter, Customs Service agents stopped their car and discovered four bundles of marijuana. The Castellanos cousins agreed to cooperate with the agents. Alejandro telephoned Ceja and asked him to return to Erika's and to "take everything out," meaning to remove the marijuana. In a subsequent recorded conversation, Ceja asked Alejandro: "Is everything going to be the same to take it out or less than the other one?" Alejandro understood Ceja to be asking how difficult it was going to be to remove the marijuana from the dressers compared to prior shipments. At around 6:00 p.m., Ceja met Alejandro at the store. When Alejandro began to remove the marijuana, Ceja warned: "It's

more trouble right now at night . . . the damn police or something because they've never seen a mess over here or anything." Customs Agents then entered the store and arrested Ceja.

<u>Motion for New Trial, Sentencing and Appeal</u>

Following his conviction, Ceja filed a *pro se* motion for a new trial in which he admitted knowing that the second through fifth shipments of furniture contained marijuana; however, he claimed that he was coerced into participating in the scheme. He submitted a sworn affidavit stating that Salvador Castellanos had threatened to kill him and his family if he did not participate. Ceja complained that he had told his lawyers about the threat both before and during trial, but that his counsel had refused to allow him to testify to present a coercion defense. Ceja also made sentencing arguments based on the alleged coercion. He argued that he was entitled to a safety-valve reduction, <u>see</u> U.S.S.G. §§ 2D1.1(b)(6), 5C1.2, and a decrease for playing a minor role.[1] <u>See id.,</u> § 3B1.2.

After holding an evidentiary hearing on Ceja's claims, at which Ceja and both of his trial lawyers testified, we denied Ceja's motion:

> I am satisfied beyond all reasonable doubt,
> and, in fact, beyond any doubt whatever
> that Mr. Ceja never told either of his

---

[1]In an attempt to become eligible for a safety-valve reduction, Ceja met with the government, but he repeated his claims that he was coerced and that he told his lawyers as much prior to trial.

> trial attorneys that he had been coerced
> into committing these offenses.  He told
> them, rather, that he did not know there
> was marijuana in the dressers and that he
> thought he was dealing in legitimate
> merchandise.
>
> The contention that he was coerced and
> that there were threats of violence against
> himself and his family that were the reason
> he participated in the offenses is something
> that he apparently thought of only after
> he was convicted.  He never told that to Mr.
> Galvan.  He never told that to Ms. Taylor
> and this is an invention of his that came
> into being after the unfavorable verdict of
> the jury.

(May 21, 2002 Tr., at pp. 113-15.)

At sentencing, we found Ceja responsible for 3,864 kilograms of marijuana, the total amount contained in shipments two through five.  This amount resulted in a base offense level of 34.  See U.S.S.G. § 2D1.1.  Having found that Ceja fabricated his stories of coercion and his lawyers' refusal to allow him to testify, we rejected his request for a safety-valve reduction, and enhanced his offense level by the prescribed two points for obstruction of justice.  See U.S.S.G. § 3C1.1.  We also rejected Ceja's request for a two-level decrease for a minor role in the offense, concluding that he provided a "safe haven" for the deliveries, helped to unload the marijuana, and finally, earned thousands of dollars for his role in the scheme.  With an adjusted offense level of 36, and a criminal history category of I, we imposed a term of imprisonment at the lowest end of the Guideline range, 188 months.

On appeal, Ceja challenged three of this court's sentencing findings: (i) that he obstructed justice, (ii) that he was not entitled to a safety-valve reduction, and (iii) that he was not eligible for a minor role reduction. The Seventh Circuit affirmed, explaining:

> After an evidentiary hearing (including testimony by both lawyers that they had not impeded Ceja's testimony and that he had never informed them about the supposed "coercion" by the other conspirators), the judge found that Ceja was lying – that he had not been coerced, and that his lawyers had not precluded him from testifying.
>
> *      *      *
>
> The district judge's factual findings are reviewed for clear error, of which there is none. They are based on live testimony and permissible inferences (such as the improbability that someone who had been coerced into participating in drug dealing would fail to tell his lawyers). Testimony at trial, detailing a controlled delivery, showed Ceja to be an active participant in the scheme. The false statements were material, so an enhancement for obstruction of justice was authorized. Deceit about a material issue also knocks out the possibility of a safety-valve reduction. And the district judge did not commit clear error or abuse his discretion by denying Ceja's request for a lower sentence as a minor participant. The judge was not obliged to believe Ceja's self-serving assertions that he was just a pawn in a larger venture; and he was held accountable for no more than the drugs imported using his business as a cover.

United States v. Ceja, 2003 WL 262063, at *1 (7th Cir. Feb. 6, 2003). Ceja has now filed a motion seeking to collaterally attack

his conviction and sentence pursuant to 28 U.S.C. § 2255.

## **DISCUSSION**

Section 2255 grants federal courts the power "to vacate, set aside or correct the sentence," but only if the defendant shows flaws in the conviction or sentence "which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Thus, "relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996).

Ceja's motion presents three claims for relief: (i) he was denied his Sixth Amendment right to effective assistance of counsel; (ii) he was denied his Sixth Amendment right to a jury drawn from a fair cross-section of the community; and (iii) he was denied his Sixth Amendment right to trial by jury in violation of Blakely v. Washington,— U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

### Ineffective Assistance of Counsel

Ceja asserts that his lawyers committed two errors that deprived him of effective assistance of counsel: (i) trial counsel failed to pursue plea negotiations (and appellate counsel failed to raise the argument on appeal), and (ii) sentencing and appellate counsel failed to argue that the quantity of marijuana attributed

to him was erroneous.[2]

To establish ineffective assistance, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If a petitioner fails to make the necessary showing under one of the Strickland prongs, the court need not consider the second prong. Id. at 697. With respect to the performance prong, a district court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. Under the prejudice prong, a defendant must establish prejudice by a "reasonable probability," or, "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Ceja's first contention is that trial counsel provided ineffective assistance by failing to pursue plea negotiations. As summarized above, after an evidentiary hearing at which Ceja and trial counsel testified, we found that Ceja told his attorneys

---

[2]Once Ceja alleged that he had told his trial lawyers of the "coercion," and that they had prevented him from testifying, he retained a new lawyer for sentencing. Another lawyer was appointed to represent Ceja on appeal.

prior to trial that he "did not know there was marijuana in the dressers and that he thought he was dealing in legitimate merchandise." (May 21, 2002 Tr., at p. 11.)  Therefore, given Ceja's protestations of innocence, which his lawyers believed, we have no trouble concluding that a recommendation to go to trial in lieu of seeking a plea agreement was "reasonable" under Strickland. Cf. United States ex rel. Jones v. Hockaday, 2004 WL 421741, at *5 (N.D. Ill. Feb. 5, 2004) ("[T]rial counsel's strategy was to contend that petitioner was acting in self defense, and perhaps that strategy might not be best served by negotiating with the prosecution.")

And even if Ceja could somehow show that failing to pursue plea negotiations was unreasonable, he cannot demonstrate prejudice.  Ceja offers no evidence, nor could he, that the government would have offered a plea agreement, or that he, and ultimately this court, would have accepted it.  See United States v. Hall, 212 F.3d 1016, 1022 (7th Cir. 2000) ("[N]o prosecutor is ever under any obligation to consider much less offer a plea bargain . . . ."); United States v. Springs, 988 F.2d 746, 749 (7th Cir. 1993) ("Prosecutors need not offer discounts and may withdraw their offers on whim.  Defendants have no substantive right to bargain-basement sentences."); United States v. Webb, 1997 WL 417356, at *1 (10th Cir. July 25, 1997) (unpublished opinion) ("[B]ecause negotiating such a plea would require the cooperation

-10-

of both the government and district court – neither of which have
any obligation in that regard – the ability to obtain a conditional
plea was beyond [the] attorney's control."). Because counsels'
decision to forego seeking a plea agreement was unquestionably
reasonable under the circumstances, and because Ceja's claims of
prejudice are entirely speculative, this ground for relief must
fail.

Ceja next argues that his sentencing and appellate counsel
were constitutionally ineffective by failing to argue that the
quantity of marijuana attributable to him was based on an allegedly
erroneous determination of the weight of each shipment.[3]   At
sentencing, we found that Ceja was responsible for three shipments
of marijuana, weighing approximately 900 kilograms each, and a
fourth shipment (the only amount recovered by law enforcement)
weighing approximately 1,164 kilograms.  This yielded a total
amount of 3,864 kilograms.  Ceja only challenges the accuracy of
the three 900 kilogram shipments.

Our finding that the second, third and fourth shipments
identified in the background section above each contained

---

[3]At sentencing, Ceja did not object to this court's determination
of the weight of each shipment, but only argued that he should not be
responsible for the September 1999 shipment.  Thus, Ceja has
procedurally defaulted on a direct claim that the amount calculations
were inaccurate, and now casts the argument as an ineffective
assistance claim.  See Massaro v. United States, 538 U.S. 500, 504,
123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (a defendant may raise an
ineffective assistance of counsel claim in a § 2255 collateral
proceeding, even though the defendant could have, but did not, raise
the claim on direct appeal).

approximately 900 kilograms of marijuana was based on co-defendant Alejandro Castellanos's trial testimony that those, in fact, were the amounts. Alejandro's testimony went unrebutted, and as a direct participant in the scheme who was present at the time each delivery was unloaded, we had no reason to discredit his testimony. And to the extent Ceja argues that Alejandro intentionally misrepresented the amounts (as opposed to just being wrong), that makes no sense – if anything, he would have wanted to *decrease* the amount of drugs, as any increase would also be attributed to him. Accordingly, based on the evidence presented at trial and at sentencing, the court estimated that each of the three subject shipments contained 900 kilograms of marijuana. <u>See</u> <u>United States v. Jarrett</u>, 133 F.3d 519, 530 (7th Cir. 1998) ("USSG 2D1.1 mandates that courts *shall* approximate the quantity of the controlled substance when the amount seized does not reflect the true scale of the offenders' activities.") (internal quotations omitted).

Against this, Ceja now claims that there were invoices enclosed with each of three contested shipments showing that they contained 600, not 900, kilograms of marijuana. Though it is not altogether clear, Ceja appears to be arguing that the invoices indicated that each shipment contained 40 dressers, and because the first shipment of 40 dressers contained 600 kilograms of cocaine (for which Ceja was not responsible), the three subsequent shipments did as well.

To begin with, there is no record evidence that these invoices existed, nor any evidence (let alone allegations), that Ceja's counsel knew about them or were negligent in not knowing about them.  And even if we grant Ceja each of these premises, the evidence adduced at trial expressly contradicted the purported invoices — Alejandro testified that each of the 900 kilogram shipments contained approximately *50* dressers.   Therefore, sentencing and appellate counsel would not have rendered ineffective assistance by declining to present a weak argument contradicted by trial testimony regarding the weight of the shipments.

Sixth Amendment "Fair Cross-Section" Claim

Ceja's next argument, raised for the first time, is that he was deprived of his Sixth Amendment right to a jury representing a fair cross-section of the community because the venire included no Hispanics.   Ceja has procedurally defaulted on this claim by failing to raise it either at trial or on direct appeal.   See Coleman v. United States, 318 F.3d 754, 760 (7th Cir. 2003).  A procedural default can be overcome if a defendant shows good cause for the default and actual prejudice, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice.   See Dellinger v. Bowen, 301 F.3d 758, 764 (7th Cir. 2002).   Ceja's motion is silent on these issues, and the court finds no evidence of cause, prejudice or a miscarriage of justice.

Even if we were to reach the merits, Ceja would not prevail. While the right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors," <u>Irvin v. Dowd</u>, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), "there is no requirement that a venire or a jury mirror the general population." <u>United States v. Raszkiewicz</u>, 169 F.3d 459, 462 (7th Cir. 1999). Defendants are not entitled to a jury of any particular composition. <u>Id.</u> Therefore, "the makeup of any given venire is not significant, provided rules for selection have been observed." <u>United States v. Duff</u>, 76 F.3d 122, 124 (7th Cir. 1996).

To make out a *prima facie* case that the fair cross-section requirement has been violated, a defendant must show that: (i) the group allegedly excluded is a distinctive part of the community, (ii) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (iii) this underrepresentation is due to systemic exclusion of the group in the jury selection process. <u>Johnson v. McCaughtry</u>, 92 F.3d 585, 590 (7th Cir. 1996) (<u>citing</u> <u>Duren v. Missouri</u>, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979)). Although Ceja could satisfy the first prong – there is no disputing that Hispanics may constitute a "distinctive part of the community" – and conceivably the second (though we need not decide the issue), he could not

satisfy the third prong. All Ceja has alleged is that the jury included no Hispanics. However, "[t]he mere observation that a particular group is underrepresented on a particular panel does not support a constitutional challenge." United States v. Grose, 525 F.2d 1115, 1119 (7th Cir. 1975). Moreover, the Seventh Circuit has repeatedly upheld this District's use of registered voter lists as complying with the Sixth Amendment's requirement that the jury selection process not systemically exclude a particular group. See United States v. Smith, 223 F.3d 554, 569 (7th Cir. 2000) ("We have found before that there is nothing wrong with the use of voter rolls to select a venire.") (citing United States v. Cooke, 110 F.3d 1288, 1302 (7th Cir. 1997)). Accordingly, because it is procedurally defaulted, and without merit in any event, Ceja's "fair cross-section" argument is rejected.

### Sixth Amendment Blakely/Booker Claim

Ceja's final argument, submitted in a supplemental pleading following the Supreme Court's ruling in Blakely,124 S.Ct. 2531, is that the drug quantity attributed to him at sentencing should have been submitted to a jury. In Blakely, a majority of the Supreme Court held that an enhanced sentence imposed by a Washington state court judge, which was based on fact neither admitted by the defendant nor found by a jury, violated the Sixth Amendment. 124 S.Ct. at 2538. The Supreme Court recently extended Blakely to the federal sentencing guidelines in United States v. Booker, — U.S. —,

125 S.Ct. 738, — L.Ed.2d — (2005). <u>Blakely</u> and <u>Booker</u> announce new rules of criminal procedure, and unless and until the Supreme Court states otherwise, their holdings are applied retroactively only to cases that are not yet final. <u>See</u> <u>United States v. Ford</u>, 383 F.3d 567, 568 (7th Cir. 2004) ("[T]he Supreme Court has not made the <u>Blakely</u> rule applicable to cases on collateral review . . . ."); <u>Carmona v. United States</u>, 390 F.3d 200, 202 (2d Cir. 2004) ("To date, the Supreme Court has not, in any other case, announced <u>Blakely</u> to be a new rule of constitutional law, nor has the Court held it to apply retroactively on collateral review."); <u>Booker</u>, 125 S.Ct. at 769 ("As these disposition indicate, we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on *direct review*.") (emphasis added) (<u>citing</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)).

Ceja exhausted his direct appeal and his case was "final" prior to the Supreme Court's decisions in <u>Blakely</u> and <u>Booker</u>. <u>See</u> <u>Griffith</u>, 479 U.S. at 321 n. 6 (A case is final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). Thus, <u>Blakely</u>, as well as <u>Booker</u>, have no applicability to Ceja's sentence.

**CONCLUSION**

For the foregoing reasons, Rafael Ceja's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 is denied.

DATE:   February 7, 2005

ENTER:  _____
        John F. Grady, United States District Judge